UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **SACV 12-01861 JGB (DFMx)** | Date | January 29, 2015 |
| Title | *Star Envirotech, Inc. v. Redline Detection, LLC; Kenneth A. Pieroni* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order (1) DENYING Plaintiff's Motion to Strike Defendants' Invalidity Contentions (Doc. No. 68.); (2) DENYING Plaintiff's Motion to Strike Defendants' Seventh, Eighth, and Fifteenth Affirmative Defenses (Doc. No. 76); (3) DENYING Plaintiff's Motion to Dismiss Counts I and IV of Defendants' Counterclaims (Doc. No. 77) ; and (4) VACATING the February 2, 2015 hearing (IN CHAMBERS)**

Before the Court are two Motions to Strike and a Motion to Dismiss filed by Plaintiff. (Doc. Nos. 68, 76, 77.) The Court finds these matters suitable for resolution without a hearing pursuant to Local Rule 7-15. After considering all papers submitted in support of and in opposition to the motions, the Court DENIES the motions. The February 2, 2015 hearing is VACATED.

## I.  BACKGROUND

### A. Procedural History

Plaintiff Star Envirotech, Inc. ("Plaintiff" or "Star") filed a Complaint against Defendants Redline Detection, LLC ("Redline") and Kenneth Pieroni (collectively "Defendants") on November 14, 2012. (Doc. No. 1) Plaintiff alleges claims for infringement of Plaintiff's U.S. patent number 6,526,808 (the " '808' Patent.") On January 7, 2013, Defendants filed their Petition for Inter Partes Review ("IPR") with the U.S. Patent and Trademark Office ("PTO"). (See Newboles Decl., Ex. A ("IPR Petition") Doc. No. 22-1.) On April 3, 2013, the Court stayed the matter pending the outcome of the IPR. (Doc. No. 31.)

On June 30, 2014, the Patent Trial and Review Board ("PTAB") issued its Final Written Decision. ("PTAB Decision," Doc. No. 33-1.) The PTAB determined that Defendant Redline failed to show that claims nine and ten were unpatentable. (PTAB Decision at 2.) Defendant Redline had only challenged these two claims. (Id. at 1.)

On July 25, 2014, pursuant to the parties' joint stipulation, the Court lifted the stay. (Doc. No. 35.) On August 8, 2014, Defendants filed a motion to dismiss (Doc. No. 39), which the Court granted in part on October 30, 2014 (Doc. No. 57). Plaintiff filed the operative Second Amended Complaint ("SAC") on November 17, 2014. (Doc. No. 60.) On December 4, 2014, Defendants filed an Answer to the SAC that set forth fifteen affirmative defenses. ("Answer," Doc. No. 65.) Defendants also filed a Counterclaim, asserting four causes of action for (1) breach of contract, (2) declaratory judgment of patent invalidity, (3) declaratory judgment of noninfringement, and (4) declaratory judgment of patent unenforceability. ("Counterclaim," Doc. No. 66.)

On December 11, 2014, Plaintiff filed a Motion to Strike Defendants' Preliminary Invalidity Contentions. ("MTS," Doc. No. 68.) Defendants opposed on December 19, 2014. ("Opp'n MTS," Doc. No. 71.) Plaintiff replied on December 29, 2014 (Reply MTS," Doc. No. 75.)

On December 29, 2014, Plaintiff filed a Motion to Dismiss Counts One and Four of Defendants' Counterclaims and a Motion to Strike Defendants' Seventh, Eighth, and Fifteenth Affirmative Defenses. ("MTD," Doc. Nos. 76, 77.[1]) On January 12, 2015, Defendants opposed. ("Opp'n MTD," Doc. No. 82.) Plaintiff replied on January 19, 2015. ("Reply MTD," Doc. No. 85.) The Court consolidated the hearings on all the above motions.

### B. Factual Background

Star manufactures equipment used for detecting leaks in different systems. (SAC ¶ 8.) Defendant Ken Pieroni, a former co-owner of Star, helped develop Star's early leak detection technology in the late 1990's. (Id. ¶¶ 13-14.) Defendant Pieroni and Star's President Jim Eli Saffie were the named inventors on the '808 patent – the subject of this litigation – which is entitled "Smoke and Clear Air Generating Machine for Detecting Presence and Location of Leaks in a Fluid System." (Id. ¶¶ 9,13.) The patent was assigned to Star. (Id. ¶ 9.) It covers a method for (1) detecting leaks in a fluid system, such as the brake or evaporative system of a car, and (2) delivering smoke into the system so that a detected leak can be physically located. (SAC, Exh. A, ("Patent Certificate") at 1.)

After leaving Star, Defendant Pieroni sold both his interest in the company and the '808 Patent. (SAC ¶ 15.) The SAC alleges that after Defendant Pieroni left Star, he and Defendant

---

[1] Although Plaintiff filed two separate Notice of Motions, it filed an omnibus memorandum (Doc. No. 78) in support of both. The Court will cite to this memorandum as "MTD," even though it also includes arguments in support of Plaintiff's motion to strike Defendants' affirmative defenses.

Redline began infringing and inducing others to infringe the '808 Patent. (Id. ¶ 16.) Defendants also sought reexamination of the '808 Patent in an effort to invalidate it, but the USPTO rejected Defendants' claims and upheld the patent's validity. (Id. ¶¶ 16-17.)

The '808 Patent originally contained nine claims. (Patent Certificate at 10-11.) After the reexamination, a tenth claim was added. (Patent Certificate at 15.) Claims one, six, and nine are independent claims while the rest are dependent. (Id. at 10-11, 15.) Claim nine consists of "[a] method for generating smoke for use at a volatile, potentially explosive environment" through a series of listed steps. (Id. at 15.) In this litigation, Plaintiff asserts only claims nine and ten of the '808 Patent.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' an opposing party's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. . . ." "Motions to strike are generally disfavored." Leghorn v. Wells Fargo Bank, N.A., 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (3d ed. 2004)). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (alteration in original) (internal citation omitted). To show that a defense is "insufficient," "the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." Securities & Exchange Comm'n v. Sands, 902 F.Supp. 1149, 1165 (C.D. Cal. 1995).

### III. DISCUSSION

### A. Plaintiff's Motion to Strike Defendants' Preliminary Invalidity Contentions

Plaintiff seeks to strike seven references cited in support of Defendants' Preliminary Invalidity Contentions ("PICs," Declaration of Richard Guerra, Exh. A, Doc. No. 70-1).[2] Plaintiff contends that Defendants raised or reasonably could have raised these seven references at the IPR, and therefore Defendants are estopped from raising them in this litigation, pursuant to statute.

The IPR estoppel provision, created by the America Invents Act, states:

> The petitioner in an inter partes review of a claim in a patent . . . that results in a final written decision . . . may not assert [] in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

35 U.S.C. § 315(e)(2). In other words, the party that petitioned for the IPR (here, Defendants) "is barred from seeking district court review on any grounds of invalidity it could have raised in the reexamination. See Avago Technologies Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.,

---

[2] Plaintiff does not seek to strike section four of Defendants' PICs, as section four sets forth Defendants' arguments that asserted claims nine and ten are invalid under 35 U.S.C. 112(1) and (2) – i.e. for lacking a written description, not providing an enabling disclosure, and for being indefinite. It is undisputed that these arguments could not have been raised at the IPR.

2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011).[3]  The petitioner may only seek review of a patent on the "basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b).

At base, the dispute here centers on one of Defendants' references: a LeakMaster A240 smoke machine (the "LeakMaster") made by Plaintiff and sold on July 1, 1998 in Encinitas, California. (PICs, Exh. A at 1.) Defendants contend they could not have put forward this reference in the IPR because the Leakmaster is an actual physical machine, not a patent or printed publication. (Opp'n MTS at 2.) Defendants contend that the Leakmaster is properly combined with the other six disputed references to create new grounds of invalidity, which could not have been presented in the IPR.[4] (Id.)

Plaintiff argues that – even though the LeakMaster itself could not have been admitted – Defendants could have instead put forward the LeakMaster's owner's manual, which Defendants had in their possession at the time of the IPR. (MTS at 5.) However, the physical machine itself discloses features claimed in the '808 Patent that are not included in the instruction manual, and it is therefore a superior and separate reference. For example, claim nine of the '808 Patent requires "locating a heating element within a closed smoke producing chamber." (Declaration of Matthew Newboles, Exh. A., Doc. No. 71-3 at 14.) It is undisputed that the LeakMaster's instruction manual does not describe the LeakMaster's closed smoke producing chamber. However, the Leakmaster itself, if dissembled, could shed light on whether it practices this claim limitation. Plaintiff contends Defendants are seeking an early claim construction of the "locating a heating element" term (Reply MTS at 2), but the Court disagrees. Claim construction has not yet occurred, and Defendants should not be foreclosed from basing their PICs on a claim construction that may ultimately be adopted.

Accordingly, Plaintiff's Motion to Strike Defendants' Preliminary Infringement Contentions is DENIED.

### B. Plaintiff's Motions to Dismiss and Strike Defendants' Inequitable Conduct Allegations

Defendants' fourth counterclaim[5] and Defendants' seventh and eighth affirmative defenses[6] are based on similar allegations. Specifically, Defendants allege that Plaintiff

---

[3] IPR estoppel attaches once the PTAB issues a final written decision. 35 U.S.C. § 315(b). Here, the PTAB issued its final written decision on June 30, 2014. ("PTAB Decision," Doc. No. 33-1.)

[4] Plaintiff does not contest that if the LeakMaster is allowed as a reference, the other six references may be combined with it to form new grounds of invalidity.

[5] Defendants' fourth counterclaim is for declaratory judgment of patent unenforceability due to inequitable conduct. (Counterclaim ¶¶ 36-47.)

[6] Defendants' seventh affirmative defense asserts that the '808 Patent is unenforceable due to inequitable conduct (Answer ¶¶ 7-9), and Defendants' eighth affirmative defense asserts (continued . . . )

committed inequitable conduct during two PTO reexaminations of the '808 Patent by failing to disclose material prior art. (Counterclaim ¶ 37; Answer ¶ 7.)

Inequitable conduct is an equitable defense to patent infringement that, if proven, bars enforcement of a patent. Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed.Cir. 2011). Inequitable conduct focuses on the misdeeds of the individuals responsible for securing a patent. Advanced Magnetic Closures, Inc. v. Rome Fastener Corp., 607 F.3d 817, 828–32 (Fed. Cir. 2010). Even deceit and misdeeds by a non-inventor during the prosecution of a patent is sufficient to "spoil[ ] the entire barrel" and leave the patent unenforceable. Id. at 828.

Defendants allege that, during the first reexamination of the '808 Patent, the PTO examiner cited another of Plaintiff's patents, Patent No. 5,922,944 (the " '944 Patent"), as prior art against claims nine and ten and, therefore, rejected those claims. (Id.) Plaintiff allegedly overcame this rejection by removing Denise Haddad as a named inventor of the '944 Patent; thus, the '944 Patent and the '808 Patent had the same inventors – Kenneth Pieroni and Jim Saffie – and the '944 Patent could not be cited as prior art under 35 U.S.C. § 102(a).[7] (Id.) Defendants do not allege that the removal of Haddad as a named inventor was improper.

The thrust of Defendants' inequitable conduct claims is Plaintiff's alleged failure to inform the PTO of Plaintiff's sale of the LeakMaster smoke machine, a sale that took place on July 1, 1998. (Counterclaim ¶ 28; Answer ¶ 8.) The LeakMaster allegedly embodies the teachings of the '944 Patent. (Id.) Defendants allege that evidence of the sale of the LeakMaster constitutes prior art to the '808 Patent. (Id.) Defendants further allege that if Plaintiff had disclosed the LeakMaster to the PTO examiner, the '808 Patent would have been denied, since the '808 Patent was filed on July 7, 1999, over a year after the sale of the LeakMaster. (Counterclaim ¶ 39; Answer ¶ 9.)

Plaintiff first argues that it had no duty to disclose the LeakMaster, as it had already disclosed the '944 Patent, and disclosure of the LeakMaster would be cumulative. (MTD at 6.) Plaintiff contends there is overwhelming Federal Circuit case law holding that a patent applicant has no duty to disclose cumulative prior art. (Id. at 6-7.)

However, taking the facts in the light most favorable to Defendants, the sale of the LeakMaster could have provided additional information to the PTAB, making it not cumulative of the '944 Patent. Notably, Defendants allege that the sale of the LeakMaster could have triggered the statutory bar for public use or sale. (Counterclaim ¶ 39; Answer ¶ 9.) This "on-

---

( . . . continued)
the '808 patent is unenforceable because Plaintiff failed to comply with the duty of candor required by the PTO. (Id. ¶ 10.)

[7] Although Defendants cite 35 U.S.C. 102(a), it appears that Plaintiff relied on the pre-1999 version of 35 U.S.C. § 103(c) to exclude the '944 Patent from consideration as prior art. (See Doc. No. 86-1 at 25-27) (Plaintiff's response to PTO's Final Office Action). Nonetheless, Defendants do not allege that the removal of Denise Haddad as an inventor was improper.

sale bar," codified in the former version of 35 U.S.C. § 102(b)[8], allows a party challenging a patent to demonstrate the patent was anticipated by showing that the invention was in public use or on sale in the United States more than a year prior to the date of the application for the patent. 35 U.S.C. § 102(b) (pre-AIA).  In other words, Defendants allege that the sale of the LeakMaster – a device that allegedly could be prior art for the '808 Patent – is not merely cumulative of the '944 Patent, but that the sale could trigger the statutory bar, which the '944 Patent by itself could not.  Thus, Plaintiff's argument is unavailing.

Plaintiff also contends that it could not have submitted the use and sale of the LeakMaster because the regulations governing reexaminations only allow for submissions of "patent or printed publications."  (MTD at 10.)  However, it is at least plausible that Star could have informed the PTO of the sale of the LeakMaster, such as through filing an information disclosure statement.

Accordingly, the Court DENIES Plaintiff's Motions to Dismiss and Strike Defendants' inequitable conduct allegations.

### C. Plaintiff's Motions to Dismiss and Strike Defendants' Breach of Contract Allegations

Defendants' first counterclaim and fifteenth affirmative defense both allege that Plaintiff breached a previous settlement agreement by bringing the current lawsuit.  Defendants allege that in 2005, Plaintiff brought a lawsuit against various parties, including Defendants, in Orange County Superior Court.  (Counterclaim ¶ 8.)  The lawsuit settled, and Plaintiff and Defendants entered into a Settlement Agreement and Release of Claims ("Settlement Agreement," Doc. No. 29) on January 13, 2006.  (Id.)  The Settlement Agreement included a covenant not to sue, which stated in part:

> "the Star Parties covenant that they will not sue or take any other action of any kind to sue for damages or preclude the Redline Parties, or any of them, or their customers, suppliers, vendors, and manufacturers from (1) using any of the technologies claimed in the Redline Patent Application.  Patent Application No. 10/975,781[9] as filed on October 28, 2004 . . .; or (2) making using, selling, offering for sale, or importing any product incorporating any of the technologies embodied in Redline's current version of the Smoke Pro."

(Id.; Settlement Agreement ¶ 13.)  Defendants allege that the accused products in this action – "the Smoke Pro Air Complete" and the "Smoke Pro Total Tech" – are embodiments of Defendants' '176 Patent.  (Id. ¶ 10.)  Defendants also allege that the two

---

[8] The language and structure of Title 35 was changed by the Leahy–Smith America Invents Act ("AIA"), Pub.L. No. 112–29, 125 Stat. 284 (Sept. 16, 2011).

[9] On July 26, 2007, the PTO allowed this Patent Application, and issued U.S. Patent No. 7,305,176 (the " '176 Patent") on December 4, 2007.  (Counterclaim ¶ 9.)

accused products incorporate the technologies that were embodied in the 2006 version of the Smoke Pro. (Id. ¶ 11.) Hence, Defendants allege that Plaintiff breached the Settlement Agreement by filing the current lawsuit for patent infringement. (Id. ¶ 13.)

Plaintiff contends that another section of the Settlement Agreement, Paragraph 13.1, refutes Defendants' allegations.[10] (MTD at 11-12.) Paragraph 13.1 states:

> "the Parties agree that nothing in Paragraph 13 or in this agreement precludes, limits, or otherwise affects any rights of the Star Parties to initiate any action against the Redline Parties for any act of infringement . . . except the Star Parties agree that they will not assert any patent infringement action against the Redline Parties for any patent that issues to Redline from the Redline Patent Application."

(Settlement Agreement, ¶ 13-1.) Plaintiff argues that Paragraph 13-1's language clearly allows Plaintiff to raise a claim of infringement and therefore Plaintiff cannot have breached the settlement agreement. (Motion at 11-12.) Plaintiff also argues that Paragraph 13-1's language controls over the more general language of Paragraph 13.[11] (Motion at 12.)

The Court finds Plaintiff's arguments unavailing. First, Defendants have alleged that the accused products in this case <u>are</u> embodiments of the '176 Patent. (Counterclaim ¶ 10.) Thus, even under Plaintiff's proposed interpretation of the contract, Defendants have alleged a breach. Second, while Plaintiff cites the rule of contract interpretation that specific provisions control over general terms (Motion at 12), part (2) of Paragraph 13 is not a "general" provision. It specifically states that Plaintiff will not sue over products "incorporating any of the technologies embodied in Redline's current version of the Smoke Pro." (Settlement Agreement ¶ 15.) It would be improper on a motion to dismiss to read this section out of existence, even if it could be read to conflict with another provision of the contract.

Plaintiff also contends that the contract requires disputes over its enforcement be heard in the Superior Court of Orange County, and thus Plaintiff's counterclaim should be dismissed. (Motion at 12.) Plaintiff's contention overreaches. The Settlement

---

[10] While normally a court may not look beyond the pleadings when deciding a motion to dismiss, the "incorporation by reference" doctrine allows the Court to take into account documents, like the Settlement Agreement, "whose contents are alleged in a complaint and whose authenticity not party questions, but which are not physically attached" to the relevant pleading. <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 986 (9th Cir.1999) (quoting <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994))

[11] Plaintiff essentially argues that the Settlement Agreement is internally inconsistent, and that Paragraph 13.1 serves to nullify part (2) of Paragraph 13. In other words, under Plaintiff's interpretation, Plaintiff could not sue for infringement for products that used any of the technologies claimed in the '176 Patent, but Plaintiff could sue over products that incorporated any of the "Smoke Pro's" technologies.

Agreement provision at issue states that "any action or proceeding arising from or relating to this Agreement will be brought in a court of competent jurisdiction in Orange County, California." (Settlement Agreement ¶ 21.) First, nothing in the provision requires the action be brought in state court – and it is undisputed that federal courts have jurisdiction over patent cases, like this one. Second, Plaintiff did bring this action in Orange County: the case was filed in Santa Ana, California and was originally assigned to Judge David O. Carter. (See Complaint, Doc. No. 1.) The case was transferred to the Eastern Division and this Court by order of the Chief Judge. (See Doc. No. 17) (transferring the case for the creation of this Court's calendar). It would be unfair to penalize Defendants for a transfer they had no hand in causing. Finally, Defendants' counterclaim is likely compulsory, as it arises out of the same issues and transactions as Plaintiff's claim for patent infringement. Thus, if the Court were to dismiss Defendants' counterclaim, Defendants would potentially never be able to enforce their rights under the Settlement Agreement.

Accordingly, Plaintiff's Motions to Dismiss and Strike Defendants' breach of contract allegations are DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motions to Dismiss and Strike. The February 2, 2015 hearing is VACATED.

**IT IS SO ORDERED**