UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STAR ENVIROTECH, INC., a Delaware Corporation,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>REDLINE DETECTION, LLC, a California limited liability company; and KENNETH A. PIERONI, an individual,<br><br>　　　　　Defendants. | Case No. SA CV 12-1861-JGB (DFMx)<br><br>**ORDER GRANTING IN PART APPLICATION FOR FEES AND COSTS AND GRANTING REQUEST TO DEPOSIT AMOUNT AWARDED IN COURT REGISTRY** |

　　　Pending before the Court is Plaintiff Star Envirotech, Inc.'s ("Star") request for expenses related to Star's June 2015 Motion for Sanctions and an Adverse Jury Instruction for Defendants' Secretion and Spoliation of Evidence, which the Court granted in part in December 2015. Defendants Redline Detection, LLC and Kenneth A. Pieroni (collectively, "Redline") object to the calculation of expenses sought by Star. The Court grants Star's motion in part and sets reasonable attorney's fees incurred as $58,335.10 and reasonable costs incurred as $15,365.70.

Also before the Court is Redline's request that this Court permit Redline to deposit the awarded fees and costs in the Court's registry, as contemplated by Federal Rule of Civil Procedure 67. The Court grants Redline's request to deposit the fees and costs awarded into the Court's registry.

# I.
# BACKGROUND

### A. Star's January 28, 2015 Motion to Compel

On January 28, 2015, Star moved to compel responses to several interrogatories and requests for production seeking certain financial and customer information from Redline. Dkt. 91. On February 27, 2015, this Court issued an order granting in part Star's motion to compel, but agreeing with Redline that certain of Star's discovery requests were overbroad. Dkt. 118 at 7-13.

### B. Star's April 23, 2015 Motion for Order to Show Cause

On April 23, 2015, Star moved for an order to show cause why Redline should not be held in contempt for failure to comply with the Court's February 27, 2015 order. Dkt. 134. Star argued that Redline had not timely produced all of the documents required by the order. Id. On April 29, 2015, this Court denied Star's motion without prejudice, explaining that Star was required to submit the motion in the form of a joint stipulation or submit a declaration explaining its failure to do so. Dkt. 142.

### C. Star's May 12, 2015 Motion for Sanctions

On May 12, 2015, Star filed a motion for sanctions in the joint stipulation format. Dkt. 148. The Court held a hearing on Star's motion on June 2, a hearing that also dealt with certain discovery requests from Redline. See Dkt. 174; Dkt. 175. On June 9, the Court issued an order stating its dissatisfaction with Redline's conduct and ordering Redline to produce additional information. Dkt. 178 at 2-3. The Court ordered that each side

would bear its own fees and costs. Id. at 3.

D. **Star's June 22, 2015 Motion for Sanctions and Subsequent Request to Reopen Depositions**

On June 22, 2015, Star filed another motion for sanctions and moved for an adverse jury instruction regarding Redline's alleged secretion and spoliation of evidence. Dkt. 187. Most of the brief was devoted to Star's secretion and spoliation of evidence arguments. See id. The Court held the first of two hearings on Star's motion for sanctions on July 21. Dkt. 234. After discussion with counsel, the Court ordered Redline to produce certain invoices by certain deadlines. Id. Redline complied substantially with this order. See Dkt. 266 at 5-7.

In its reply brief on the motion for sanctions, Star requested an order compelling witnesses to re-appear for their depositions because key documents were produced after their depositions were taken. Dkt. 214 at 14. On August 6, 2015, the Court issued an interim order ordering two of the depositions be reopened. Dkt. 238.

On September 9, 2015, Star filed a supplemental memorandum in support of its pending motion for sanctions and an adverse jury instruction. Dkt. 250. In that memorandum, and among other things, Star argued that Redline's counsel had erroneously limited the reopened depositions to certain subjects. Id. at 8-11.

The Court held a second hearing on September 15, 2015, at which the Court noted that it had not in fact limited the subject matter of the reopened depositions. Dkt. 266 at 8-10. The Court ordered the parties to file supplemental briefs regarding the motion for sanctions, partly at the parties' request. Dkt. 257; Dkt. 266 at 11, 17, 18, 20, 23, 38-39. On September 29, 2015, Star filed a supplemental memorandum in support of its motion for sanctions, arguing for terminating sanctions. Dkt. 294. Approximately half of

Star's brief was devoted to Star's spoliation and terminating sanctions arguments. See id.

On December 16, 2015, the Court issued an order addressing Star's June 22 motion for sanctions and subsequent, related briefing. Dkt. 377. The Court found that there was no evidence that Redline committed spoliation and declined to grant terminating sanctions. Id. at 14-16. The Court granted Star's request for monetary sanctions. Id. at 1-2, 19. The Court stated that it would order Redline to pay Star's attorney's fees and costs associated with certain re-opened depositions, and at least a portion of Star's attorney's fees and costs associated with "the motion for sanctions." Id. at 19.

### E.  Star's Application for Attorney's Fees

On January 8, 2016, Star submitted a motion in support of its application for attorney's fees. Dkt. 383. In the application, Star requested:

- $79,583.00 in fees and $3,800.03 in costs related to events leading up to the motion for sanctions (Dkt. 383 at 12-13; Dkt. 383-2 (Declaration of Richard Guerra ("Guerra Decl.")) ¶¶ 18, 34-43);
- $151,610.50 in fees and $10,964.51 in costs associated with the motion for sanctions incurred between June 15, 2015 and October 14, 2015 (Dkt. 383 at 11-12; Guerra Decl. ¶¶ 18-28);
- $24,470.00 in fees and $4,906.90 in costs related to the re-opened depositions (Dkt. 383 at 13; Guerra Decl. ¶¶ 18, 29-33); and
- $16,875.00 in fees related to the preparation of this fee application (Dkt. 383 at 13; Guerra Decl. ¶¶ 18, 44; Dkt. 383-3 (Declaration of Daisy Manning ("Manning Decl.")) ¶ 5.)

In total, Star requested $292,209.94 in fees and costs. Redline opposed the motion. Dkt. 395. Star did not file a reply.

**F.   Redline's Request for Deposit of Award in Court Registry**

On February 5, 2016, Redline supplemented its opposition to the motion in support of Star's attorney's fees application. Dkt. 398. Redline requested that this Court order Redline to deposit any sanctions awarded into the Court registry. Id. Star opposed this request. See Dkt. 401.

## II.

## ANALYSIS

The Court "has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, [an appellate court] will defer to its determination . . . regarding the reasonableness of the hours claimed by the [movant]." Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir.1992). Reasonable attorney's fees are generally calculated based on the "lodestar" method. Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 978 (9th Cir. 2008). Under this method, the Court determines a reasonable fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In reviewing the hours claimed, the Court may exclude hours related to overstaffing, duplication, and excessiveness, or that are otherwise unnecessary. See id. The reasonableness of hours expended depends on the specific circumstances of each case. Camacho, 523 F.3d at 978.

The resulting figure is referred to as the "lodestar," and this amount is a presumptively reasonable fee.[1] Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1997) (as amended). "When faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either

---

[1] Although presumptively reasonable, the court may adjust the lodestar to account for factors not already subsumed within the initial lodestar calculation. Morales, 96 F.3d at 363. This Court has not taken those additional factors into account and so does not list them here.

5

in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." <u>Gates</u>, 987 F.2d at 1399 (citations and internal quotation marks omitted). In that event, courts must adequately articulate their reasons for selecting specific percentage deductions. <u>Id.</u>

Having reviewed the briefing, the Court partially agrees with Redline that the hours Star has claimed are not reasonable.

A. **<u>Pre-June 2015 Fees and Costs</u>**

Star has requested $79,583.00 in fees and $3,800.03 in costs "resulting from [Redline's] discovery misconduct that forms the basis for Star's motion for sanctions"—fees and costs that were incurred between January 5, 2015 and June 14, 2015. <u>See</u> Guerra Decl. ¶¶ 17-18. As an initial matter, this Court will not grant Star any costs or fees related to anything before Star's June 22, 2015 motion for sanctions. In previous orders, the Court had explicitly or implicitly ruled that the parties would bear their own fees and costs. <u>See, e.g.</u>, Dkt. 178 at 3. Star's request for fees and costs related to matters pre-dating the June 22 motion is denied.

B. **<u>Fees and Costs Related to Motion for Sanctions</u>**

Star has requested $151,610.50 in fees and $10,964.51 in costs related to the motion for sanctions incurred between June 15, 2015 and October 14, 2015.[2] Dkt. 383 at 12; Guerra Decl. ¶¶ 18-28.

///
///

---

[2] The Court rejects Redline's contention that the "one and only motion that should be the subject of [Star's] fee and cost request is Star's September 29, 2015 motion for terminating sanctions . . ." Dkt. 395 at 9. That "motion" was a supplemental brief (supplementing the June 22 motion for sanctions). <u>See</u> Dkt. 266 at 38-39. Star filed this supplemental brief in response to this Court's clear order for <u>supplemental</u> briefing. <u>Id.</u>

6

### 1. Reasonable Hourly Rate

The reasonableness of an attorney's hourly rate is assessed according to the prevailing market rates in the relevant community, which is generally the forum in which the district court sits." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir.1997). Redline does not argue that Star's counsel charge unreasonable hourly rates, and based on this Court's review of Star's briefing, including the American Intellectual Property Law Association's economic survey (see Manning Decl., Exhibit M), the Court concludes that the hourly rates charged by Star's former and present counsel are reasonable.

### 2. Hours Reasonably Expended

This Court has combed through Star's time entries incurred between June 15, 2015 and December 30, 2015. See Guerra Decl., Exhibit I ("Exhibit I") at 10-29. The Court has disregarded time entries specifically devoted to spoliation, terminating sanctions, or that combined time with other matters unrelated to the motion to compel (such as the argument over native files or summary judgment matters). See, e.g., Exhibit I at 24 ("Begin research on issues and standards for terminating sanctions . . ."), 26 ("email correspondence . . . regarding draft motion for partial summary judgment and revised supplemental brief"). The Court has also disregarded entries that are overly vague, appear to be duplicative or simply "conferences" or "meetings" with multiple attorneys present, or reflect partners less-involved with the day-to-day workings of the case staying up to speed by reviewing documents or emails. See, e.g., Exhibit I at 21 ("Review . . . brief . . .; review emails back and forth between Richard Guerra and Todd Malynn re: same . . ."), 26 ("emails with team re: supplemental brief"). Furthermore, David M. Stahl ("DMS") performed several tasks that a paralegal could have performed. See, e.g., Exhibit I at 26 ("Finish adding pincite record citations…"). Following this review, the Court concludes that the following hours were reasonably

expended on matters related to the motion to compel:

| Attorney | Billing Rate[3] | Hours | Lodestar |
|---|---|---|---|
| DMS | $350 | 11.6 | $4,060 |
| Lawrence S. Gordon ("LSG") | $480 | 8.1 | $3,888 |
| RG | $450 | 64.7 | $29,115 |
| Todd Malynn ("TM") | $415 | 38.0 | $15,770 |
| JAG | $550 | 40.9 | $22,495 |
| TOTAL | | | $75,328 |

As is within its discretion, the Court will also reduce the lodestar by an additional 10%. Gonzalez v. City of Maywood, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[W]hen a district court reduces either the number of hours or the lodestar by a certain percentage greater than 10%, it must provide a clear and concise explanation for why it chose the specific percentage to apply."). Redline makes several persuasive arguments, any one of which could support this decision. As Redline points out (see Dkt. 395 at 15), Feldman does not appear to have submitted to this Court the bills submitted to the insurance carrier. Presumably, the charges submitted to the carrier would have been smaller, given the many partner-level attorneys performing duplicative work. In addition, the Court agrees that the total number of hours spent by Feldman on these matters, as well as the number of attorneys staffed, was excessive. Applying this 10% across-the-board reduction, the lodestar is reduced to

---

[3] Guerra Decl. ¶ 3.

$67,795.20.

As suggested in its December 2015 order, this Court will require Redline to pay a portion of Star's fees and costs—specifically, 50%. The Court arrived at this percentage by reviewing Star's relevant briefing and arguments and determining that approximately half has been devoted to issues that the Court decided in Redline's favor—primarily the spoliation and terminating sanctions arguments. While a few of Star's time entries specify time devoted to these non-compensable issues, most do not. Redline should not have to bear costs associated with those failed arguments. The Court therefore requires Redline to pay 50% of the reduced lodestar, or **$33,897.60**.

As for the costs requested by Star, Redline argues that Star had no reason to send two partners to hearings. Dkt. 395 at 27. The Court disagrees. Redline also argues that it should not have to pay for the first or business class flights of those two partners. Id. Star has the right to attorneys of its choosing and to have them attend hearings in person. However, the Court agrees with Redline that certain costs reflected in Star's invoice are unreasonable. A "working dinner" for two attorneys should not total $220.33. Exhibit I at 31. There are duplicate, identical entries for what were presumably lunch and dinner meals on September 15, 2015. Id. at 32. Taking into account these changes, the Court will require Redline to pay costs incurred by Star between June 25, 2015 and October 14, 2015 related to the motion to compel in the amount of **$10,458.80**.[4]

///

///

---

[4] Redline argues that Star should have attached receipts verifying all of the costs tallied in its itemization of costs. Dkt. 395 at 25. It is enough for this Court that Richard Guerra verified under penalty of perjury that these were the costs incurred. See Guerra Decl. ¶¶ 5, 18, 28, 32-33.

**C.  Fees and Costs Related to Re-Opened Depositions**

The Court next addresses the fees and costs associated with the re-opened depositions. Star contends that the fees amount to $24,470.00 and the costs amount to $4,906.90. Guerra Decl. ¶ 18. Redline does not dispute the costs, but argues that the recoverable amount of fees should be $14,272. Dkt. 395 at 13.

Star's application reflects that five different attorneys worked on the re-opened depositions. See Guerra Decl. ¶ 31. This is too many. This Court is therefore disregarding the 3.1 hours in total time billed by James A. Gale ("JAG"), Lawrence S. Gordon ("LSG"), and David M. Stahl ("DMS"). Id.

That leaves RG (who claims 23.2 hours) and TM (who claims 28.6 hours). Id. It appears that TM took both of the depositions: one on August 26, 2015, which lasted 5.5 hours, and one the next day, which lasted 2.5 hours. Exhibit I at 19. Looking at the RG and TM entries leading up to the deposition, and discounting those that are block-billed with subjects other than the deposition, could have been performed by a paralegal, are overly vague, or appear duplicative or excessive, this Court would allocate 9.1 hours to RG and 23.5 hours to TM. Given RG's billing rate of $450 an hour and TM's billing rate of $415 an hour, the lodestar for the two depositions comes to $4,095 for RG and $9,752.50 for TM, for a total of **$13,847.50**.

In addition, Star incurred **$4,906.90** in costs associated with deposition transcripts and videographer fees, which Redline does not dispute. Guerra Decl. ¶ 18; Dkt. 395 at 10.

**D.  Fees and Costs Related to Fee Application**

Star asks for $16,875.00 in fees related to preparing this fee application. Dkt. 383 at 14; Guerra Decl. ¶ 18; Manning Decl. ¶ 5.

Star spent a good portion of its briefing (approximately 25%) requesting fees and costs that were obviously not due to it, including fees and costs

10

incurred before June 2015 as discussed above.

Furthermore, Redline should not bear the cost of inefficiencies that followed from Star's decision to change its representation. See Dkt. 401-1 (Declaration of Steven E. Holtshouser) ¶¶ 2, 4. Star requests $7,470 (16.6 hours) in fees for time spent by Feldman Gale ("Feldman") and $9,405.00 (37.1 hours) in fees for time spent by Harness, Dickey & Pierce ("Harness"). Guerra Decl. ¶ 44; Manning Decl. ¶ 5. Harness has not represented to this Court that it did not bill Star for transition time. To the contrary, it appears based on Daisy Manning's Declaration that the following time entries should be disallowed because they represent fees expended due to Star's counsel change: "SEH" spent 1.0 hour e-mailing Richard Guerra; "KB" spent 1 hour comparing Guerra's spreadsheet to Harness's. See Manning Decl., Exhibit J at 2. The Court further assumes that Harness spent at least 3 hours reviewing and incorporating Guerra's declaration and "getting up to speed" on the case. Guerra's time entries, similarly, should be discounted at least 2 hours for time presumably spent coordinating with Harness.

This Court first subtracts from Harness's fees the $955 billed by "SHE" and "KB" for time spent on Guerra's declaration. Second, this Court subtracts from Guerra's fees $900 for 2 hours presumably spent coordinating with Harness. Third—as it appears that Manning primarily drafted the application for Harness—this Court subtracts 3 hours from Manning's time, or $900, for time presumably spent getting up to speed and reviewing Guerra's work. This leaves the lodestar for Feldman at $6,570 and the lodestar for Harness at $7,550.

However, this Court further reduces Feldman's and Harness's hours by 25% to account for briefing regarding fees and costs that were clearly not covered by this Court's order, bringing Feldman's fees to **$4,927.50** and Harness's fees to **$5,662.50**.

11

E.  **Deposit of Award in Court Registry**

Redline asks this Court to order Redline to deposit the fees and costs discussed in this order into the Court's registry pursuant to Federal Rule of Civil Procedure 67 ("Rule 67"). See Dkt. 398. Redline makes this request because Star's former counsel, Feldman, has asserted a lien over these fees and costs, a lien Star disputes. See Dkt. 398-3; Dkt. 398-5.

Feldman submitted a "Third Party Response" to Redline's request, stating that it has no objection to the proposal. Dkt. 405 at 1. Star opposes Feldman's submission and asks that it be stricken from the record. Dkt. 406. Star's request is moot; the Court has not taken Feldman's submission into account in deciding this matter.

Rule 67 provides the mechanism for depositing disputed property with the Court. Fed. R. Civ. P. 67. Rule 67 provides, in relevant part: "If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit."

Rule 67 enables a party to be relieved of responsibility for a disputed fund while the parties litigate ownership of the fund. See, e.g., Qwest Corp. v. City of Portland, 204 F.R.D. 468, 470 (D. Or. 2001) (quoting Cajun Elec. Power Coop., Inc. v. Riley Stoker Corp., 901 F.2d 441, 444–45 (5th Cir. 1990)). The question of whether to grant a Rule 67 motion is a matter committed to the Court's discretion. See Gulf States Util. Co. v. Alabama Power Co., 824 F.2d 1465, 1475 (5th Cir. 1987).

While there is little case law on Rule 67, this seems an appropriate circumstance in which to invoke it. Feldman claims that it has a lien over the funds. See Dkt. 398-3; Dkt. 398-5. Star disputes this. Id.; Dkt. 401. This Court

hereby relieves Redline of responsibility for the disputed funds while Feldman and Star resolve the matter. Pursuant to Rule 67(a), the Court directs Redline to "deliver to the clerk a copy of the order permitting deposit." Fed. R. Civ. P. 67(a). The Court further directs the clerk to deposit the above-referenced $73,700.80 in accord with Rule 67(b). See Fed. R. Civ. P. 67(b) (requiring money paid into the court to be "deposited into an interest-bearing account or invested in a court-approved, interest-bearing investment").

In its opposition to Redline's request, Star argues that Feldman is only asserting a lien on settlement proceeds (see Dkt. 401 at 3), but it seems clear from e-mail communications between the three firms that Feldman's stance is not restricted in this way. See Dkt. 398-3; Dkt. 398-5. Star also argues that Redline should have brought this request as a motion, not as a supplemental memorandum, and asks the Court to strike the supplemental brief. See Dkt. 401 at 6-7, 10. While the Court is inclined to agree that Redline should have brought a separate motion, the parties have apparently had a full opportunity to submit their arguments, and the Court is not inclined to incur any more delay or briefing on this issue. See Dkt. 398; Dkt. 401; Dkt. 403; Dkt. 406; Dkt. 408.

Star also argues that this issue is not ripe for a decision because Star has not had an opportunity to reach an agreement with Feldman. See Dkt. 401 at 8. Interpreting Rule 67 as a rule only to be applied once disputes are settled would negate its purpose. Moreover, if recent filings are any indication (see Dkt. 408; Dkt. 409), it does not appear that a resolution is imminent.

///
///
///
///
///

## III.
## CONCLUSION

Based on the foregoing, the Court grants in part and denies in part Star's motion. As described above, the Court grants Redline's request to deposit the awarded amount of **$73,700.80** into the Court registry pursuant to Rule 67 within 28 days of the date of this order. Redline may contact the Court's courtroom deputy clerk with any questions about making such a deposit.

Dated: March 17, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

cc: Fiscal Section, Clerk's Office